Robertson, Ch. J.
Of course, on a peremptory direction to a jury to find a verdict for either party, the other party is entitled to the benefit of whatever construction such jury would be entitled to give to any part of the evidence most favorable to the latter, and conflicting evidence may be disregarded. The plaintiffs, also, were not entitled to recover in this action on any promise by the defendants to pay three-fourths of their claim, when the latter were able to do so, because no such ability was proved. The real and *12 insuperable difficulty of the defendants, in this case, is, that the only defense set up in the answer, beyond the denial of the making and validity of the original contract, is not good in point of law. Such defense consists of the making and supposed part performance of a new undertaking on the part of the defendants to. procure their friends to lend them, $3500, which, when lent* they would pay to the plaintiffs in satisfaction of their claim, and the actual performance of such undertaking by procuring such loan, paying such sum to the plaintiffs, and their acceptance of the same in full satisfaction of théir claim. The additional fact of its being left to the honor of the defendants to pay the residue of three fourths of the claim of' the plaintiffs when able, may be disregarded, as not creating any legal obligation, and, therefore, entirely immaterial. Indeed much stress is laid, as will be seen hereafter, in a defense now brought forward, but not set up in the pleadings, upon the fact that a promise, legally binding, to pay such residue formed part of such compromise. The sole part of such compromise, which was incumbent on .the defendants to perform, consisted of procuring the loan and paying the money to the plaintiffs.
The note of'a third party for a particular sum, given and received in satisfaction, may discharge a debt, for a larger amount, [Le Page v. McCrea, 1 Wend. 167,) and the actual payment, by a third party, of a certain sum of money directly to the creditor of another person, and similarly received by him, may produce the same effect; although that may be doubted in a case where the debtor promises to repay such sum, thus virtually borrowing it, and making the third party merely his agent to discharge such debt. But I cannot see how, when the agreement is made with the debtor alone, the fact of the mode in which the debtor is to obtain the money, which he is pay to his creditor, can do away with the inefficiency of any payment by such debtor of a smaller sum, in extinguishing a debt for a larger one. (Harrison v. Close, 2 John. 448. Seymour v. Minturn, *13 17 id. 169. Dederick v. Leman, 9 id. 333.) After the money is borrowed, it ceases to be the property of the lenders, and it is converted into or exchanged for a mere debt of the borrower to them. He was not their agent, in paying it to his creditor, and the lenders retained no power to enforce, as they had no interest in enforcing, such payment. The creditor could not, upon the loan, sue such debtor for money had and received for his use. The mode of obtaining the money became, therefore, immaterial, and the only defense, therefore, which does not consist of a denial of the plaintiffs original claim, becomes entirely unavailing.
But it is proposed to construct, out of the evidence in the action; an entirely new and different defense, not set up in the answer, and, as I think will appear, not urged on the trial. Upon what principle the right to do this is claimed, has not been suggested. Ho application has been made to conform the answer to the proof, (Code, § 173,) even if such defense could be found in the evidence, and there would be several obstacles to granting =such a privilege. It would not be a “ furtherance of justice,” under the 173d section of the Code, to disturb a verdict, perfectly proper upon the pleadings as they stand, to let in a new defense, of which the plaintiffs had no notice, before or on the trial, at least until after the evidence was closed. Besides, such an amendment would “ substantially change the defense.” This new defense is, that before the time for the performance of the original contract had expired, and before the damages for its non-performance had been determined or adjusted, the plaintiffs agreed to accept |3500, and a promise by'the defendants to pay, when they were able, as much more as would make up three fourths of such damages, when ascertained, in lieu of the original contract and any claim thereon.
The first difficulty in the way of such a defense, if it were fairly pleaded, would be that the right of the plaintiffs to damages, as well as the mode of ascertaining them, was fully settled by the parties before any agreement for a com *14 promise was made, and without reference to any specific compromise. The defendant Koop swore, in the answer in this case, that on or about the 30th day of July, 1864, the day the contract became due by its terms, the plaintiffs claimed the sum of $6400, and the defendants agreed to pay $3500, and such additional sum as, with that, should make three-fourths (or $4800) of “ the plaintiffs alleged claim;” and that the plaintiffs accepted such sum, “in settlement and compromise of their said claim, and demand as aforesaid.” The sum of $3500 was actually paid on that 13th day of July. The plaintiffs did not buy the like amount of exchange until two days afterward, (August 1.) So that, according to the answer, when the offer of compromise was made, two things must have been well understood between the parties; first, that the rate of damages was fixed; and, secondly, that three-fourths of them exceeded $3500.
It is a mistake to suppose that the original contract could legally have been performed by the defendants, according to its terms, after the 31st day of July. The option of performing it on the 31st of July, being Sunday, was illegal and void. The privilege of performing on Monday, when a period fixed in a contract for performing would otherwise end on Sunday, rests entirely upon the presumption of law that the parties did not intend to include a day on which it was unlawful to perform it. (Salter v. Burt, 20 Wend. 205.) But when parties limit the performance, by mentioning a specific day, which is a Sunday, and which they are bound to know to be so, no such presumption can be indulged. The day could not have been more precisely fixed, if the word “ Sunday ” had been prefixed to the 31st of July.
"Without regard to the day for performing the contract, however, the evidence shows, without contradiction, at least enough to constitute a legal waiver by the defendants of any tender of the price or demand of performance by the plaintiffs, necessary to enable them to rescind the contract *15 or maintain an action for its non-performance. .A day of two "before the 30th of July, the broker who made the contract (Klugg) was informed by the defendant Grapel that they could not deliver the bills of exchange in question. He was “kind of positive,” as the witness stated. After some discussion as to who should tell the plaintiffs, such broker finally notified them for the defendants. This the plaintiff De Ueufville testifies was done on the 29th of July. Such date is, ho.wever, immaterial; but he after-, ward saw the defendant Koop, and asked him “whether the information he had received of their inability to fulfill their contract, was true?” The latter replied that it was, for the present. Such plaintiff then said he “would be obliged to buy the exchange in, and there would le a loss.” Such defendant then, in answer to a question as to what he meant" to do, proposed to see his friends, and try his utmost to pay some money on account, and requested the plaintiffs to wait until the defendants should be in a position to pay them in full. In that conversation the plaintiff De Ueufville (as he thought) told the defendant, “ that to establish the deficiency, he should ask a broker to buy the exchange in;” to which the defendant assented. Uothing further (as De Ueufville testified) was said at that time. The testimony of the defendant Koop does not materially alter sueh statement, except as to the date of the interview, which he fixes on the 28th (instead of the 29th) of July. He said that after an expression by such plaintiff of his astonishment that such defendant was not able to meet the contract, and an explanation by the latter off the reason, the latter said: “If I can give you 50 per cent on the dollar, I will endeavor to obtain it from my friends;” and they separated, after a short time, with the understanding that such plaintiff should repeat the conversation to his partner, and let the defendant know next day what they would do. This last testimony corroborates the fact of the notice, on the part of the defendants, of their intention not to fulfill the contract, and does not controvert the fact that *16 the price of the day was to determine the damages. It was assumed, by both parties, that even three-fourths of them would exceed $3500, and that the 50 per cent would be about that sum. This was hot only a waiver of a demand of the exchange, sufficient to enable the plaintiffs to rescind the contract, (Terwilliger v. Knapp, 2 E. D. Smith, 86,) but of a tender of the price sufficient to make the plaintiffs’ right of action complete. (Vaupell v. Woodward, 2 Sandf. Ch. 143.) It may even be looked upon as the determination of the option of the defendants, under the contract, sufficient to make the contract performable on that day, in order to avoid af risk of a higher rise in price, and greater damages, by further delay. But no terms of compromise were agreed upon or approached at that interview. The defendant Koop made a conditional promise to pay a certain sum, and the plaintiff made a promise to make a proposal at the next interview. I am at a loss to understand what obstacle remained, after the occurrences at that interview, to prevent the plaintiffs from forthwith commencing an action, in case they thought proper, to recover damages according to the prices of that day. The defendant did not propose to pay any sum, merely in liquidation of the amount of damages, but merely to pay one half the understood ' amount, which both parties seem to have conceded was about $7000. ETor did he claim that the plaintiffs must wait until the 1st of August. Evidently neither party desired to run any risk by longer delay. This view of what occurred at that interview will be found materially strengthened by what took place at the next one, which evidently related to what was settled at such former one, and by the subsequent correspondence between the parties.
If the right óf action was then complete, and the rate of damages determinable by the price of the day, no payment of, or agreement to pay what was conceded to be a less sum than the full amount, could operate as a discharge of the claim of the plaintiffs. The compromise (whatever it was) was the work of the next interview, and a separate trans *17 action. It was avowedly, as claimed by the defendant, a payment of a less sum than what was conceded to be due, and not the payment of a gross sum in satisfaction of uncertain and unliquidated damages; and it was also conceded to be, and paid as being, less than three fourths of the real damages, whatever they were. All that passed between the parties, whether at such first interview or afterward, including every proposal made by the parties, tended to show that every remark and offer were made in reference to a conceded right and fixed sum.
At the second interview between the plaintiff De ¡Neufville and the defendant Koop, which took place, as both admit, on the 29th of July, the reply of the latter to a question of the former, whether the defendants “ could pay sev.enty-five per cent,” was that he would “try to pay in full;” and his only reply to a more specific proposition by the plaintiff to pay $3500, and have it left to the honor and ability of the defendants afterward “ to make it up to seventy-five per cent,” was that “ he would make it up, not only to seventy-five per cent, but in full, if he was able.” The defendant Koop testified- that he said, at such interview, to the plaintiff, “Iwill fay you $3500 if you will release your claim, and if I am able hereafter I will make it up to seventy-five per cent on the whole amountand that the plaintiff'merely replied: “Very well, do so; and see, next week, if you cannot do something better.” These two statements contain, substantially, all that passed at such conversation relative to a compromise, which was given in evidence. The $3500 was then paid next day. ¡Neither of the parts of such conversation, as detailed by either party, . contain any definite proposal by either definitively accepted by the other, but the statements of both show that $3500 was spoken of as less than three fourths, and about one half, of the supposed damages. I cannot find in the oral testimony of what occurred a,t this conversation, evidence of a clear, complete, definite proposal, made and accepted, to pay $3500 in- cash, and to undertake to pay enough *18 more to make it up to seventy-five per cent when the defendants should be able, in satisfaction of all their liability, whatever it might be, on the original agreement. Such being the ease, the subsequent correspondence of the parties may be appealed to, in order to fix it with more certainty. The letter of the defendants, of the 2d of August, in answer to one written by the plaintiffs the day previous, demanding the unpaid residue of their claim, makes the understanding different from any yet alluded to. It was, “ to use their best endeavors to make up seventy-five per cent of” that claim, and to pay at once $3500 in cash. They state in it the impossibility of doing more, but trust in their ability, before long, to pay the' balance. This, certainly, is not the language of those who have just made a complete compromise of the original claim, by paying a certain sum in cash, and substituting a new promise to pay enough in addition, so as to make three fourths of the whole amount, instead of their liability, on the original undertaking, but is rather an appeal to pity. “ Using their best endeavors ” is not equivalent to paying if they should be able. The defendants would be bound to show, in the former case, that they had made exertions to procure the money,"but had failed. In the latter case the plaintiffs would be bound to show ability to pay.
Of course there can be no doubt that, while the original contract continued to be performable at a future day, and the advantages or losses to arise from. its. performance therefore necessarily remained uncertain, an agreement by either party to receive a certain sum, either with or without a contingent promise to pay more, as a consideration for the rescission of such contract, or even a mutual one to rescind it gratuitously, would discharge the obligation of the original contract. But the unsurmountable difficulty in the present case is, that the sum actually paid was so paid as part of a larger sum admitted to. be due, and so admitted by being accompanied by a promise to pay enough more to make up an aliquot part of some sum, even three *19 fourths of which was avowedly greater than the sum so paid, which, therefore, must have been previously determined by the parties.
I do not see that the actual purchase by the plaintiffs of exchange, on the 1st of August, affects this question. They .were entitled to recover the difference between the contract and market price on the day when the contract was performable, which, from the evidence, and the law applicable to it, I have inferred was about the time of the first interview between the plaintiff De Neufville and the defendant Koop, and any purchases were only important as fixing the market price.
It is also somewhat remarkable, and not a slight difficulty, that the new defense, not set up in the pleadings, which it is now proposed to construct out of the evidence, was not insisted upon at the trial. It formed none of the grounds on which a motion to dismiss the complaint was made. One of those grounds is, “that before the expiration of the time for the performance of the original contract, the parties met and agreed upon the amount of damages, and the manner in which those damages should be paid and settled.” A tolerably strong admission that the parties liquidated the damages before agreeing, on a compromise, to pay less than the whole in satisfaction. The legal propositions which the defendants’ counsel requested the court to give to the jury, all assume that the plaintiffs had a fixed and certain demand, which was compromised. The fifth request to charge, which covered, substantially, the same ground as that before mentioned in regard to a dismissal of the complaint, assumed that “ the parties agreed among themselves upon the measure of damages, for the defendants failure to fulfill their contract, and the manner in which that difference should be compromised and settled. Indeed the whole case appears by the pleadings, evidence, points taken on the trial, and argument before us, to have been put upon the ground, either that borrowing the money from friends, or the promise to pay the deficiency of seventy-five *20 per cent conditionally, made the payment of a less sum a good satisfaction of a greater sum due. It is a very grave question how far this court, on exceptions only, can spell out a defense from the evidence, not set up in the pleadings or urged at the trial, even if it were tenable.
I am, therefore, in favor of overruling the exceptions,' and affirming the judgment.
Jones, J.
The defense set up in the answer is what is technically known as an accord and satisfaction; that is, it alleges that the plaintiffs, in consideration that the defendants would borrow from their friends $3500, agreed to accept said sum of $3500 in satisfaction of a demand of $6400; that the defendants did borrow said sum of $3500, and paid the same to the plaintiffs in satisfaction of said sum of $6400, and the plaintiffs received the same in satisfaction thereof. There is no allegation that the said sum of $6400 was not justly due and owing at the time of the agreement. The mere calling it an alleged demand is not an averment that it was not justly due and owing.
The allegation that it was to be left entirely to the honor of the defendants to pay an additional sum, does not affect the character of the pleading. It only shows that the theory of the plea was that the payment and receipt of a less sum in satisfaction of a greater one, when it is a part of the arrangement that such less sum should he borrowed, in consequence of the debtors’ inability to pay it himself, constitutes a bar to an action brought to recover the difference between the sum paid and the debt on which it was paid. This is essentially a plea of accord and satisfaction.
To entitle the defendants to a verdict, they must show that the agreement alleged in the answer was in fact made, and that it constitutes in law a good defense. They cannot, without amending their pleading, succeed upon proof of an agreement different from that relied on in the answer, although such agreement would he a good defense.
There is not sufficient evidence in this case to warrant, a *21 jury in finding that there; was, in fact, such an agreement made as is alleged in the answer. If, then, the judge had been specifically requested to leave that question of fact to the jury, he would have been bound to refuse the request.
When a judge directs a verdict, and there is no specific request to leave any particular facts to the jury, and only a general exception to his direction to the jury, then only two matters can be inquired into, on a review of his decision : 1. Do the uncontroverted facts call for a decision in favor of the party against whom he directed a verdict ? 2. Would a verdict of the jury in favor of the party in whose favor the judge directed the verdict be set aside as against the evidence ? If both these queries be answered in the negative, the decision of the judge must be affirmed. This results from the doctrine laid down in Clark v. The Mayor, &c. (24 How. Pr. cited from p. 336;) Winchell v. Hicks, (18 N. Y. Rep. cited from p. 565;) The Marine Bank v. Clements, (31 id. 33.)
In the case at bar (although there are requests which will be mentioned hereafter) there is no specific request to the judge to leave to the jury to determine as a question of fact whether the agreement set up in the answer was made or not. There is, however, a general exception tó his directing a verdict for the plaintiffs.
Upon examining the evidence, I do not find any uncontroverted facts which call for a decision in favor of the defendants, on this point. On the contrary, I find evidence which would clearly sustain a verdict finding that no such agreement as is alleged in the answer was made. Consequently this verdict cannot be set aside either on the ground that such an agreement was made, or that there was sufficient evidence to require the submission of that matter to the jury.
There is evidence tending to establish that either one of' two agreements was made: 1st. That the plaintiffs, in consideration of the defendants’ borrowing $3500 from their friends, and paying it to the plaintiffs on account of the *22 sum of $6400 admitted to be due, agreed to give the defendants time to pay the balance. 2d. That before any breach of the contract sued on, and before any thing was due thereon, the parties made, and for a sufficient consideration substituted, a new agreement in place of the contract sued on.
The first of these agreements, I think, would constitute no defense. (Brooklyn Bank v. DeGrauw, 23 Wend. 342.) The second, I am inclined to think, would, but it is not necessary to decide the point.
The difficulty in the' way of the defendants is that they have not pleaded either one of these two agreements. Consequently they cannot ask for a verdict on the strength of either of them. In this view, the refusal of the judge to charge as requested was perfectly correct. All of those requests were based on the assumption of there being sufficient-evidence to establish one or the other of these two agreements; and they were requests desiring the judge to charge the jury that if they found either one of these two agreements to have been made, they should find for the defendants. As neither of these agreements was set up in the answer, or embraced in the issue to be tried, I think the judge properly refused to charge the requests.
The exceptions taken to the exclusion of evidence are not well taken. The evidence offered was either incompetent, or was asking the witness to reiterate testimony already given by him.
There is one ' ground for the motion for a nonsuit which should be noticed, (the others are covered by the above views;) that is, a part of the second ground: “ That the defendants had until the end of July 31, 1864, in which to perform, and the plaintiffs must prove a demand, and offer to pay on the last day.” The complaint allegés that the defendants had expressed their inability to perform, and the plaintiffs’ evidence sustains the allegation. This was sufficient to waive a demand, and offer to pay by the plain- ' tiffs. (Crist v. Armour, 34 Barb, cited from pp. 386, 387.)
*23 For these reasons, I think the plaintiffs should have judgment on the verdict, with costs.